UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBERTY MUTUAL INSURANCE CO.,

                    Plaintiff,                         Case No. 16-cv-10423

v.                                                Honorable Thomas L. Ludington

DEVERE CONSTRUCTION CO., INC., et al.,

                    Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE AFFIRMATIVE DEFENSES AND ENTERING JUDGMENT AS TO COUNT ONE**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") provided a number of payment and completion bonds to Defendants, a variety of construction companies[1] with contracts to complete a number of projects for the State of North Carolina and North Carolina counties and local municipalities. After Defendants experienced cash-flow problems, Liberty Mutual received a number of claims from labor and material providers alleging that Defendants had failed to pay them. On February 5, 2016, Liberty Mutual filed suit against Defendants. ECF No. 1. In the complaint, Liberty Mutual identifies eleven claims: breach of contract, exoneration and quia timet, specific performance of the indemnity agreement, breach of trust fund provisions, breach of statutory trust fund provision, common law conversion, statutory conversion, fraud/misrepresentation, constructive fraud/misrepresentation, fraudulent conveyance, and constructive fraudulent conveyance.

---

[1] Although suit was originally brought against both the Defendant companies and the owners of the companies in their individual capacity, the owners have all sought bankruptcy protection. According, Liberty Mutual is seeking partial summary judgment against the Defendant companies only.

On March 14, 2016, Liberty Mutual filed a motion for a preliminary injunction to prevent Defendants from transferring assets and require Defendants to post collateral security. ECF No. 21. That motion was provisionally granted on April 14, 2016. ECF No. 41. After limited discovery occurred, the Court issued an order that granted Plaintiff's motion for a preliminary injunction and ordered Defendants to post collateral in the amount of $12,500,000. ECF No. 56. After Defendants did not post collateral, the Court issued another order which again directed Defendants to post collateral and imposed daily sanctions of $2,500 for each day that passed before collateral was posted. ECF No. 70. Defendants filed a motion for reconsideration of that order, arguing that they were unable to afford to post the collateral as directed. They further argued that they did not wish to declare bankruptcy and requested that the Court "supervise the orderly liquidation" of the Defendants' assets. ECF No. 72. That motion was denied. ECF No. 85.

Now, Liberty Mutual has filed a motion for partial summary judgment and a motion to strike Defendants' amended affirmative defenses. ECF Nos. 100, 102. For the reasons stated below, those motions will be granted.

## I.

Many of the material facts are not disputed by the parties. Plaintiff Liberty Mutual is an insurance company which, among other things, acts as a surety for significant payment and completion bonds for government construction contractors.[2] Defendants are a number of construction companies which entered into various contracts for public construction contracts in North Carolina. This case arises out of a number of payment and completion bonds which Liberty Mutual provided to Defendants for those projects. *See* Compl. at 4–7, ECF No. 1.

---

[2] North Carolina law requires construction contractors to obtain payment and performance surety bonds in order to guarantee payment of subcontracts and material providers as well as performance on construction contracts for North Carolina governmental entities.

**A.**

The parties entered into a General Agreement of Indemnity on July 29, 2010. *See* GAI, ECF No. 104, Ex. B. The GAI was comprehensive in scope. Several of the most relevant provisions will be reproduced here. Within the document, the Defendants are identified as the "Indemnitors," and "Principals," while Liberty Mutual is identified as the "Surety." *Id.* at 1.

The GAI obligated Defendants to indemnify Liberty Mutual for any losses sustained as a result of its surety agreement:

> The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs, and expenses of whatsoever kind or nature, including, but not limited to pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Idemnitor(s) and/or Principal(s), court costs, counsel fees, accounting, engineering and other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.

*Id.* at 1, ¶ 2.

Under the agreement, Defendants are required to pay Liberty Mutual collateral security upon demand:

> If Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs, and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased a reserve; (b) made any payments; or (c) received any notice of any claims therefor.

*Id.*

The Indemnity provision also provides that:

> In the event of any payment by the Surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated . . . and that *the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.*

*Id.* (emphasis added).

In the GAI, the Defendants agreed to "assign, transfer, pledge, and convey to the Surety and agree to use their best efforts to cause the Principals to assign, transfer, pledge, and convey to the Surety as collateral security for the full performance of the covenants and agreements herein contained, . . . the following":

> (a) all the right, title and interest of the Indemnitors and/or Principals in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds . . . (d) all actions, causes of actions, claims and demands whatsoever which the Indemnitors and/or Principals may have or acquire against any subcontractor, laborer or materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer or materialmen.

*Id.* at 1, ¶ 3.

In the event of Defendants' default on one of the bonded contracts, the GAI provided that Liberty had the right to "takeover" and complete the project at Defendants' expense:

> In the event of the following: breach, default, or termination asserted by the obligee in any Bond; any Principal's abandonment of the work or forfeiture of any contract covered by the Bond, any Principal's failure to pay obligations incurred in connection therewith . . . then the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by the Bonds . . . at the expense of the Indemnitors and Principals, to complete or arrange for the completion of the same, and the

- 4 -

> Indemnitors and Principals shall promptly, upon demand, pay the Surety for all
> losses, fees, costs and expenses so incurred.

*Id.* at 2, ¶ 5.

The Defendants waived any right to notice of default or execution of any bonds governed by the agreement. *Id.* at 3, ¶ 10. The GAI further provided that all of Defendants' "interest, title and rights in any contract or undertaking referred to in any Bond" were to be "held as a trust fund" which "shall inure to the benefit of the Surety for any liability or loss it may have to sustain under any Bond." *Id.* at 3, ¶ 11.

Importantly, the GAI gave Liberty Mutual the right to settle claims in its sole discretion *unless* Defendants provided collateral security:

> The Surety shall have the right, at its option and sole discretion, to adjust, settle or
> compromise any claim, demand, suit or judgment upon any Bond, unless any
> Indemnitor or Principal, providing a reasonable legal basis therefor, shall request
> the Surety to litigate such claim or demand, or to defend such suit, or to appeal
> from such judgment, and shall deposit with the Surety, at the time of such request,
> cash or collateral satisfactory to the Surety in kind and amount to be used in
> paying any judgment or judgments rendered or that may be rendered, with
> interest, costs, expenses and attorneys' fees, including those of the Surety.

*Id.* at 3, ¶ 13.

Similarly, the GAI appointed Liberty Mutual as Defendants' attorney-in-fact "with the full right and authority, but not the obligation, to exercise all the rights of the Indemnitors and Principals assigned, transferred, and set over to the Surety in this Agreement, with full power and authority to execute on behalf of and sign the name of any Indemnitor and/or Principal." *Id.* at 3–4, ¶ 18. That power extended to any document which needed to be executed "in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this agreement." *Id.* Further the Defendants agreed to prospectively "ratify and confirm all acts and actions taken and

done by the surety as such attorney-in-fact and agree to protect and hold harmless the Surety for acts herein granted as attorney-in-fact." *Id.*

## B.

While in the process of completing numerous large-scale construction projects for North Carolina counties and municipalities, Defendants ran into cash flow problems. According to Defendants, the North Carolina Department of Transportation withheld payment on completed projects and asserted liquidated damages claims "in hopes of reducing the large payable" which Defendants had accrued against the North Carolina Department of Transportation. Def. Resp. at 5, ECF No. 110. Regardless of the reason, Liberty Mutual received numerous claims on the bonds alleging that Defendants were not paying their bills.

On November 24, 2015, Dick Crittenden, owner of one of the Defendants, sent Liberty Mutual a letter. Crittenden Letter, ECF No. 104, Ex. E. In the letter, Crittenden referenced Defendants' unfavorable cash flow situation and requested additional loans from Liberty Mutual. *Id.* at 1. Crittenden explained that, barring financial assistance from Liberty Mutual, the Defendants would "have no choice but to stop work on these projects." *Id.* Crittenden stated: "If in fact Liberty wishes to have DeVere continue to work on these projects, we are happy to cooperate and will do everything we can do to minimize the cost." *Id.* Crittenden informed Liberty Mutual that Defendants' only "real asset of value" remaining was twenty-one million dollars in pending receivables due from the Department of Transportation. *Id.* at 2. The letter then provided an estimate of the funds necessary to complete the projects. *Id.* at 3–4.

In response to Defendants' financial circumstances, the parties agreed to a "Memorandum of Understanding" whereby Liberty Mutual would advance money to "finance Devere's continued operation to complete the Bonded Projects." Mem. Understanding, ECF No.

- 6 -

104 at 6, Ex. F. At the same time the Memorandum of Understanding was executed, Defendants

provided letters which advised that Defendants were defaulting on all their construction projects

with North Carolina governmental entities. *See* Letters of Default, ECF No. 104, Ex. F.

According to Defendants, Liberty Mutual delayed providing financial assistance for nine

weeks. By that point, subcontractors had demobilized from the projects and began filing payment

bond claims. Defendants further alleged that Liberty Mutual refused to cooperate with

Defendants in prosecuting collection of Defendants' outstanding accounts receivables.

According to Liberty Mutual, negotiations regarding extension of additional funds were

unsuccessful because Defendants were requesting financing conditions that Liberty Mutual was

unwilling to accept. On January 27, 2016, Liberty Mutual sent a letter formally rejecting

Defendants' proposed financing terms and providing notice of default on the bonds. Sebastian

Letter, ECF No. 104, Ex. I. In that letter, Liberty Mutual also requested that collateral security in

the amount of $12,500,000.00 be posted. *Id.* at 7.

To date, Defendants have not indemnified Liberty Mutual nor posted collateral, despite

Liberty Mutual's entitlement to collateral under the GAI and this Court's multiple orders

directing Defendants to post collateral. Defendants' primary objection is that Liberty Mutual

"did not consult with DeVere or staff in the negotiation and settlement process and did not

present settlement proposals for review and input prior to final acceptance of the same." Def.

Resp. at 9.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look

in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.

Liberty Mutual requests summary judgment on Count I of its complaint only: breach of contract by failure to indemnify or provide collateral. Liberty Mutual also requests that Defendants' affirmative defenses related to the breach of contract claim be stricken because they are legally untenable. Those motions will be granted.

### A.

The provisions of the GAI unambiguously entitle Liberty Mutual to both indemnification of losses and the posting of collateral. *See* GAI at 1, ¶ 2 ("The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs, and expenses of whatsoever kind of nature . . . If Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs, and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability.").

Defendants do not dispute that they have not indemnified Liberty Mutual or posted collateral. Likewise, Defendants do not dispute that Liberty Mutual has suffered financial losses

as a result. Rather, Defendants assert only two arguments: that there are material issues of fact regarding the amount of damages Defendants have suffered and that Liberty Mutual's claim for collateral security is premature. Neither argument has merit.

First, Defendants argue that Liberty Mutual has not provided "proper documentation" of the costs or expenses it has incurred. Def. Resp. at 11. Defendants acknowledge that Liberty Mutual has provided a declaration from its claims counsel summarizing Liberty Mutual's losses, but argue that the declaration is not sufficient to substantiate Liberty Mutual's request for damages. In response, Liberty Mutual points to the provision in the GAI which provides that "vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." GAI at 1, ¶ 2. Defendants attempt to sidestep that provision by asserting that "by definition, prima facie evidence is not conclusive and subject to rebuttal." Def. Resp. at 11. That is true, but Defendants have not produced any affirmative evidence which would undermine the prima facie evidence Liberty Mutual has presented.

"Provisions in indemnity agreements granting to the indemnitor the right to compromise and settle claims, and providing that vouchers and other evidence of payment shall be prima facie evidence of the propriety thereof, have been upheld as not against public policy and enforced by the courts." *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968).[3] These provisions are meant to "facilitate the handling of settlements by sureties and obviate unnecessary and costly litigation." *Id.* at 363.

Against this background, Defendants argue that Liberty Mutual had an obligation to present evidence of its losses beyond the declaration. That is not so. The purpose of allowing a

---

[3] In *Bloomfield*, the indemnity provision was substantially identical to the provision in the GAI here: "'the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefor to the Company.'" *Id.* at 359 n.1.

declaration to serve as prima facie evidence is to free sureties from the burden of exhaustively documenting every aspect of its damages from primary documents. Liberty Mutual has provided a declaration which, under the unambiguous terms of the GAI, is prima facie evidence of its losses.[4] The burden thus rests with Defendants to rebut that prima facie case by presenting affirmative evidence of bad faith. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When the moving party has carried its burden [at summary judgment], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations omitted).

Defendants argue that the declaration provided by Liberty Mutual, which asserts $23,274,628.13 in losses, is contradicted by another spreadsheet provided to Defendants on November 11, 2016, which reflected that Liberty Mutual has sustained only $19,740,279.29 in losses. *Compare* Spreadsheet of Losses, ECF No. 104, Ex. K, *with* November 2016 Email and Spreadsheet, ECF No. 110, Ex. B. This argument falls far short of rebutting the prima facie case of damages that Liberty Mutual has established. The spreadsheet Defendants rely upon as revealing the contradiction was provided on November 11, 2016. The declaration of losses now relied upon by Liberty Mutual was filed with its motion for summary judgment on December 9, 2016. The fact that Liberty Mutual's losses increased over a one month period does not suggest a contradiction in Liberty Mutual's numbers. Defendants have not presented any evidence of a contradiction in Liberty Mutual's asserted losses, much less evidence of bad faith.

Defendants also attempt to argue that because Liberty Mutual avers that its damages will increase in the future, there is no conclusive evidence of Liberty Mutual's current damages. The fact, however, that more damages will be sustained in the future does not mean that Liberty Mutual cannot quantify the damages it has already sustained. Defendants assert that Liberty

---

[4] The sufficiency of the declaration is further revealed by the fact that the declaration included a sixteen page spreadsheet which provides details of every claim made to Liberty Mutual and revealing the total of claims made to be $23,274,628.13. *See* Spreadsheet of Losses, ECF No. 104, Ex. K.

Mutual will settle claims in the future that will decrease its overall damages. But Defendants do not try to substantiate that argument. Given the substantial amount of claims against Liberty Mutual, it seems exceedingly likely that Liberty Mutual's losses in the future will rise, not fall. Again, and most importantly, Defendants have not presented affirmative evidence to the contrary and thus have not rebutted Liberty Mutual's prima facie case.

Third, Defendants argue that the consultant and attorney fees which Liberty Mutual includes in its damages are excessive and unreasonable.[5] However, the GAI clearly provides that Defendants are liable for all consulting and attorney fees that Liberty Mutual incurs as a result of a breach of the agreement. GAI at 1, ¶ 2. Thus, the declaration would also provide prima facie evidence of the validity and good faith of those expenses as well. *See id. See also Bloomfield*, 401 F.2d at 362 ("The surety was authorized to incur expense for investigating and defending the claims asserted against it and to employ accountants, attorneys and investigators to perform this service."). There is, as Defendants argue, a requirement under Michigan law that attorney fees awards be reasonable. *See Smith v. Khouri*, 481 Mich. 519, 528 (2008). However, Defendants have produced no affirmative evidence of excessiveness or unreasonableness. As already explained, the contractual provisions whereby declarations constitute prima facie evidence of losses sustained in good faith have been upheld by courts as consistent with public policy. If Liberty Mutual were required to specifically document all of its consulting and attorney fees expenses, the reason for the prima facie provision of the GAI would be undermined. Because Defendants have not provided any evidence to rebut the prima facie case that the attorney fees and consulting fees that Liberty Mutual is seeking are reasonable, there is no genuine issue of fact regarding those fees. *See also State Auto. Mut. Ins. Co. v. Reschke*, No. 206-CV-15410, 2008

---

[5] Defendants assert that Liberty Mutual is seeking $628,122.97 for work provided by Boyle Consulting Group, Inc., $1,132,119.47 for work provided by Meridian Consulting Group, and $792,239.42 for work provided by Watt, Tieder, Hoffar & Fitzgerald, LLP, law firm.

WL 4937971, at *5 (E.D. Mich. Nov. 14, 2008) (rejecting the argument that professional and consulting fees were excessive because the defendant had not provided evidence "from which a rational jury could find for the defendant").

Finally, Defendants argue that Liberty Mutual's claim for the posting of collateral security is premature. In support, Defendants cite *Safeco Ins. Co. of Am. v. Oakland Excavating Co.* for the proposition that "[d]emand by the surety of collateral is a condition precedent to suit." No. 208-CV-10546, 2009 WL 1658404, at *4 (E.D. Mich. June 12, 2009). That is true, but Defendants cannot reasonably argue that no collateral demand was made. On January 27, 2016, a representative of Liberty Mutual sent a letter demanding collateral. Sebastian Letter, ECF No. 104, Ex. I. Defendants admit that the letter was sent, but argue that it was only received by former counsel of Defendants, not the principals themselves. Liberty Mutual has provided FedEx receipts which demonstrate that each individual Defendant received a copy of the letter. *See* ECF No. 114, Ex. 1. More importantly, this Court has twice ordered Defendants to produce collateral. Defendants' argument that they have not received notice of a collateral demand is without merit.

In short, the terms of the GAI unambiguously entitle Liberty Mutual to the damages it seeks. Under the GAI provisions, Liberty Mutual has provided prima facie evidence of its damages. Defendants have not produced affirmative evidence to rebut that prima facie case. Thus, summary judgment is appropriate.

**B.**

In its motion to strike affirmative defenses, Liberty Mutual argues that Defendants' affirmative defenses to Liberty Mutual's breach of contract claim are not legally cognizable and should be stricken. In response to the motion, Defendants argue that it should be denied because it is untimely. But Defendants do not argue that the affirmative defenses have legal merit.

Certainly, Defendants have not raised these affirmative defenses in opposition to Liberty Mutual's motion for summary judgment on the breach of contract claim. Thus, it is ultimately irrelevant whether those affirmative defenses might have been meritorious: they were not raised in opposition to the motion for summary judgment.[6] To the extent Defendants raised these affirmative defenses in opposition to the motion for summary judgment, they have been rejected. To the extent these arguments were not raised, they are now moot. In either circumstance, the affirmative defenses are deficient as a matter of law. They will be stricken.

### C.

Having concluded that Liberty Mutual has conclusively demonstrated its entitlement to damages under the GAI, the only remaining question is whether judgment in the amount of the established damages will be entered now. Liberty Mutual requests that judgment be entered in the amount of the currently substantiated damages and that it be given leave to file a motion for an amended judgment once the final amount of its damages is known. In support of this request, Liberty Mutual cites *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const. Co.*, No. 07-13189, 2009 WL 928848, at *4 (E.D. Mich. Mar. 31, 2009), aff'd, 479 F. App'x 684 (6th Cir. 2012), and aff'd, 479 F. App'x 684 (6th Cir. 2012). In *Travelers*, the court granted the plaintiff's request to "file a motion for an amended judgment for any additional claims received or any additional losses, costs, expenses, or fees incurred by the Plaintiff after June 30, 2008 that are related to the Agreement." *Id.* Identical relief was provided in *Reschke*, 2008 WL 4937971, at *7. Defendants

---

[6] It should be further noted that the provisions of the GAI, quoted above, unambiguously provide Liberty Mutual with the right to settle the affirmative claims without needing to provide notice to or cooperate with Defendants. If Defendants had presented evidence indicating that Liberty Mutual had settled claims in bad faith, summary judgment might not be appropriate. But as already explained, Defendants have not presented any such evidence. Further, the fact that Defendants have not posted collateral after having been ordered to undermines any argument regarding bad faith they might make. *See Great Am. Ins. Co. v. E.L. Bailey & Co., Inc.*, 841 F.3d 439, 448 (6th Cir. 2016) (holding that the defendant's failure to post collateral undermined its arguments regarding bad faith). *See also Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1316 (S.D. Fla. 2008) (explaining that "several courts have held that a principal's failure to post collateral defeats the defense of bad faith" and collecting cases).

have not addressed this request by Liberty Mutual except to argue that because Liberty Mutual's damages will rise, the amount of its current loss is undeterminable. Given Liberty Mutual's clear entitlement to damages under the GAI, however, it would be inequitable to require it to wait until it has resolved all pending claims against it before entering judgment against Defendants. The bonds in this case cover a wide variety of complex construction projects. The claims process is intricate and time-consuming. Because Liberty Mutual has adequately demonstrated its damages as of December 9, 2016, judgment will be entered in that amount. Because Liberty Mutual will also be entitled to damages in the as-yet undetermined amount of its final losses, it will be granted leave to file a motion for an amended judgment. Liberty Mutual shall be ordered to file a status report once every three months updating the Court and Defendants on the progress of its attempts to resolve all remaining claims, including an updated spreadsheet listing its current damages.

## IV.

Accordingly, it is **ORDERED** that Liberty Mutual's motion for partial summary judgment, ECF No. 100, is **GRANTED.**

It is further **ORDERED** that Liberty Mutual's motion to strike affirmative defenses, ECF No. 102, is **GRANTED.**

It is further **ORDERED** that Defendants' affirmative defenses of Mitigation of Damages, Unreasonable/Unrecoverable Costs, Bad Faith, No Liability for Payments, and Release are **STRICKEN** to the extent they are advanced against Liberty Mutual's claim for breach of contract.

It is further **ORDERED** that, in accordance with Federal Rules of Civil Procedure 54, 55, and 58, on Count One of Liberty Mutual's Complaint against Defendants, judgment on Count

- 14 -

One of Liberty Mutual's Complaint is entered in favor of Plaintiff Liberty Mutual and against the company Defendants in the amount of **$23,274,628.13.**

It is further **ORDERED** that Liberty Mutual is **DIRECTED** to submit a status report on or before **May 29, 2017,** indicating the progress made towards full resolution of all remaining claims and including an updated spreadsheet.


Dated: February 28, 2017                                    s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge


PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 28, 2017.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager